```
            IN THE UNITED STATES DISTRICT COURT FOR
           THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                *
KIMBERLY DAVIS,
                                *
     Plaintiff,
                                *    CIVIL NO.: WDQ-06-0665
v.
                                *
SRS TECHNOLOGIES, ET AL.,
                                *
     Defendants.
                                *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Kimberly Davis sued SRS Technologies[1] ("SRS") and Michael Griffin, Administrator National Air and Space Administration Goddard Space Flight Center, ("NASA Goddard") for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 arising out of her employment relationship with SRS and alleged employment relationship with NASA Goddard.

Pending is NASA Goddard's motion to dismiss or, in the alternative, for summary judgment. For the reasons discussed below, summary judgment will be granted to NASA Goddard.

I. Background

In 2002, Davis began working as a Senior Analyst with SRS. Compl. ¶ 11, 12. Davis worked at Goddard on the Mission

---

[1] On September 26, 2006, the Court approved a Stipulation of Dismissal as to SRS Technologies.

Assurance Service Contract, a general contract between NASA Goddard and SRS (the "MAS Contract"). *Id*. ¶ 13. In January 2004, Davis was reassigned to a new project, which was created by John Maristch, a NASA Goddard employee, and given to SRS as a new service order called Service Order No. 1.075 under the MAS Contract (the "Maristch Project"). *Id*. ¶ 14. Under the Maristch Project, Davis, on behalf of SRS, was to select a software system, customize it, and create a database of NASA Goddard supplier information. Mem. Supp. Mot. at 3.

Maritsch, whose office was two doors away from Davis, allegedly engaged in a pattern of inappropriate conduct directed towards Davis, including sexually offensive comments and later, touching. Compl. ¶¶ 16-17. When Davis complained to Maritsch and even threatened to officially complain to others, Maritsch allegedly explained to her that: (1) two women who complained about his conduct in the past were fired; and (2) he would "go to any length to protect his job and that he had a wide array of guns, some untraceable." *Id*. ¶¶ 18-19.

Despite Maritsch's alleged threats, in March 2004 Davis allegedly complained "to her supervisors" about Maristch. *Id*. ¶ 21. In April, Davis complained directly to Donald Sova, her direct supervisor at SRS, who involved SRS Vice President Trase Travers. *Id*. ¶ 23. In June 2004, Davis met with Travers who allegedly failed to take any action. In October, Davis spoke


with Travers who suggested that he would: (1) talk to Maritsch; (2) transfer Davis from NASA Goddard; and (3) replace Davis as the direct customer communication representative on the project. Mem. Supp. Mot. Ex. 3 at 2 (Sworn Statement of Travers to EEO Investigator) ("Travers' sworn statement"). In November 2004, SRS transferred Davis from NASA Goddard's offices to SRS's offices in Greenbelt. Compl. ¶ 33. Upon Davis's transfer, Dawn Sewalt, an SRS employee, became the lead of the Maritsch Project. *Id*. ¶ 31.

In January 2005, Davis filed a written complaint of sexual harassment regarding Maritsch's conduct with SRS. Id. ¶ 36. On February 9, 2005, Lynne Slater, NASA Goddard's EO Complaints Manager, learned from SRS that an SRS employee wished to file a complaint regarding a NASA Goddard employee and on February 14, 2005, Davis filed an informal complaint with NASA Goddard. In April 2005, Maritsch was issued a Notice of Proposed Removal and in August 2005, he was ultimately fired.

II. Analysis

NASA Goddard has moved to dismiss or, in the alternative, for summary judgment, arguing that: (1) Davis was not an employee of NASA Goddard; (2) even if Davis is an employee, she failed to exhaust her administrative remedies properly; and (3) even if she did exhaust her administrative remedies, Davis has not sufficiently alleged hostile work environment or retaliation

claims. Davis counters that: (1) NASA Goddard was her Joint Employer; (2) there are material facts in dispute; and (3) her situation meets the standards for equitable tolling. The Court need only address whether Davis was an employee of NASA Goddard as her failure to create a genuine issue of material fact regarding her employee status is dispositive of NASA Goddard's motion.

A.  Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The opposing party, however, must produce evidence upon which a reasonable fact finder could rely. *Celotex*, 477 U.S. at 317. The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

In addition, hearsay, conclusory statements, and "self-

4

serving opinions without objective corroboration" found in affidavits filed in opposition to a motion for summary judgment will not be considered by the court. *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

B.   The Employee Status of Davis

Title VII of the Civil Rights Act of 1964 states that all *employees* of the Federal Government "shall be made free from any discrimination based on . . . sex." 42 U.S.C. 2000e-16(a). Accordingly, Davis must be an employee of NASA Goddard to state a claim; NASA Goddard disputes this.

NASA Goddard argues that this Court does not have subject matter jurisdiction because Davis is not an employee of NASA Goddard. As NASA Goddard's attack on Davis's status as an employee involves the merits of a Title VII action, which requires that the plaintiff be an employee, the Court will not address the employment status of Davis in the context of 12(b)(1). *U.S. v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); 42 U.S.C. 2000e-16(a). Instead, the Court will treat the arguments of NASA Goddard regarding her employment status as an attack on the merits of her case. *North Carolina*, 180 F.3d at 580.

Conceding that she is an employee of SRS, Davis argues that she was also an employee of NASA Goddard under the theory of joint employment. Under joint employer theory, "multiple

5

entities may be found to have 'jointly exercised the requisite amount of control for Title VII liability to hold.'" *Takacs v. Fiore*, 473 F.Supp.2d 647, 656 (D. Md. 2007) (*citing Grimes*, 988 F.Supp. 935 n2). To be sure, however, independent contractors are not covered by § 2000e-16. *King v. Dalton*, 895 F.Supp. 831, 837 (E.D. Va. 1995).

In Title VII litigation, the Fourth Circuit applies the *Spirides v. Reinhardt*, 613 F.2d 826 (D.C. Cir. 1979), test for determining employee status. *Id*. at 838 (*citing Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981-82 (4th Cir. 1983)). Under this test, the right to control, although important, is neither the only factor nor dispositive. *Id*. Courts also consider the following factors:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Spirides*, 613 F.2d at 832. Although the parties agree that this is the test to be applied, they do not agree on the outcome of that application.

The uncontroverted evidence is that SRS, and not NASA Goddard: (1) hired Davis; (2) assigned Davis to the MAS Contract; (3) paid Davis; and (4) had the right to fire Davis.  Mem. Supp. Mot. Ex. 5, ¶ 8 (Decl. of Abigail Harper, Deputy Director of the Office of System Safety and Mission Assurance and Maritsch's supervisor during the time at issue).  Moreover, Davis received her bonuses and all benefits from SRS.  *Id*.  SRS deducted her taxes, contributed to her pension plan, retirement and insurance, and provided sick leave and annual leave.  *Id*.

Davis argues that Maritsch exerted control over numerous aspects of her employment; for example, Davis asserts that Maritsch influenced her performance evaluations.  The evidence, however, is that NASA Goddard did not conduct her performance evaluations; SRS did.  Harper Decl. ¶ 8.  Although Maritsch may have provided input into Davis's performance reviews, that participation did not convert NASA Goddard from SRS's customer to Davis's employer.  As further evidence of control, Davis also contends that Maritsch authorized her bonus.  Davis Aff. ¶¶ 26-27.  The evidence is that in response to SRS's query, Maritsch stated that a few hundred dollars was appropriate.  Mem. Opp. Mot. Ex. 2 at 20 (Sworn Statement of Maritsch to EEO Investigator) ("Maritsch's sworn statement").  Maritsch, however, learned a year later that SRS had given her a $1,000 bonus.  *Id*.

Davis contends that Maritsch was involved in overseeing her

7

work and instructed her to perform particular tasks.  Davis Aff. ¶¶ 13-14.  Maritsch's responsibility, however, was to ensure that the Maritsch Project was completed in accordance with its service order.  Harper Decl. ¶¶ 8-9.  Moreover, the two did not work ordinary schedules as Maritsch only worked from NASA Goddard two to three days a week during the period in question and Davis teleworked some days.  Maritsch Sworn Statement at 2; Davis Aff. ¶ 19.

Davis claims that Maritsch requested her for the Maritsch Project, but she offers no evidence contradicting SRS's evidence that it actually had the power to assign her.  Indeed, that Maritsch, an employee of a customer of SRS, requested Davis does not indicate that NASA Goddard had the power to assign Davis.  In addition, although Davis argues that Maritsch caused her to be reassigned subsequently, the evidence is that SRS relocated Davis to *SRS offices* and changed the SRS liaison to NASA Goddard after she complained about Maritsch's conduct in writing.  Travers's sworn statement at 2.  Indeed, even Davis's evidence is that Travers reassigned Davis.  Maritsch's sworn statement at 20.  The Court rejects Davis's assertion that Maritsch reassigned her because the evidence indicates otherwise and Davis offers no objective corroboration for her statement.

Davis asserts that she worked onsite at NASA Goddard using NASA Goddard office space, office furniture, a scanner, a

8

government phone line and phone number, and a government email account. Davis Aff. ¶ 4. Davis, however, concedes that she did not: (1) have access to the NASA Goddard intranet; (2) receive a NASA Goddard Telephone Directory; (3) receive NASA Goddard announcements delivered via the NASA Goddard mailroom; or (4) receive EEO process training offered to NASA Goddard employees. Davis Aff. ¶ 85-88. Moreover, although NASA Goddard offered her use of its space, SRS ultimately retained the right to assign her to NASA Goddard and to transfer her elsewhere. *See* Travers sworn statement at 4 (Travers, regarding Maritsch's role in Davis's transfer, "I did not want [Davis] to be the customer interface because the customer was John Maritsch"). Indeed, following her reassignment she was told that she could not go to NASA Goddard's site, yet she continued to work on the Maritsch Project. Davis Aff. ¶ 30.

In addition, the evidence is that over the course of many months Davis complained only to her SRS supervisors about Maritsch's conduct. Davis Aff. ¶ 60 (In April 2004, Davis followed SRS Unlawful Harassment policy and complained to Sova); ¶ 67 (June 2004 meeting with Travers); ¶ 71 (late Summer 2004 complaint to Sova and SRS human resources); ¶ 77 (October 2004 complaint to Sova). In September 2004, several months after her initial complaint to her SRS supervisors, she was scheduled to go to a workshop with Maritsch. *Id*. ¶ 74. Instead of telling

9

anyone at NASA Goddard that she would not attend, she told her SRS supervisor. *Id*. ¶ 76. In fact, Davis did not contact a NASA Goddard EEO counselor until SRS advised her to do so. *Id*. ¶ 83.

Importantly, there is no evidence of any intention on the part of NASA Goddard to become her employer or of Davis to be an employee of NASA Goddard. The Maritsch Project was a specific order under the MAS Contract which created a contractual relationship between SRS and NASA Goddard. Under that relationship, SRS was a contractor and NASA Goddard a customer. Mem. Supp. Mot. Ex. 2 at 1 (Sworn Statement of Sova to EEO Investigator) ("Sova's sworn statement"); Harper Decl. ¶ 6. In fact, Davis affirmed that, as a contractor, she received no EEO training from NASA Goddard. Davis Aff. ¶ 85.

Applying the *Spirides* factors, the Court notes that "[a]lthough control is the most important individual factor in determining whether an employment relationship exists, the totality of the circumstances must be considered [because] *all* clients maintain some degree of control over the work of a hired independent contractor." *King*, 895 F.Supp. at 842.

The remaining factors establish that NASA Goddard was not her employer. Although Davis conducted some of the work for NASA Goddard on NASA Goddard's property, she did not have access to many things an employee would have had, including the NASA Goddard intranet, telephone directory, and NASA Goddard internal

10

announcements. In addition, Davis has not offered evidence that NASA Goddard: (1) hired her; (2) paid her; (3) offered her retirement benefits; (4) paid her social security taxes; or (5) offered her the EEO training offered to its employees. Moreover, Davis offers no evidence indicating that: (1) her relationship with NASA Goddard would have continued after the Maritsch Project ended; or (2) any party intended her to be become an employee of NASA Goddard. The evidence establishes that NASA Goddard "has not so transcended the bounds of client-contractor relationship as to become her employer." *King*, 895 F.Supp. at 842. Accordingly, a reasonable jury could not find that NASA Goddard employed Davis.

III. Conclusion

For the reasons stated above, Davis was not an employee of NASA Goddard; thus, NASA Goddard's motion will be granted.

June 26, 2007                              /s/
Date                                William D. Quarles, Jr.
                                    United States District Judge